# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

------------------------------------------------------------

TRACEY TOOKER, and TT LTD., INC.

                       Plaintiffs,

     -against-

BARBARA WHITWORTH, d/b/a WHITWORTH HATS,

d/b/a WHITWORTH DESIGNS, and CHANDRA

RANSAMIE

                       Defendants.

------------------------------------------------------------

**SUMMONS**

Index No. 653813 /2015

Date Index Number Purchased

November 19 2015

To the Persons Named as Defendants above:

    PLEASE TAKE NOTICE THAT YOU ARE SUMMONED and required to answer the complaint of the Plaintiff herein and to serve a copy of your answer on the plaintiffs at the addresses indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

    YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: November 19, 2015

                                                        _____

                                                        Tracey Tooker

                                                        _____

                                                        TT Ltd., Inc.

**Plaintiffs**

Tracey Tooker

18 Mercer Street

New York, NY 10013

561-628-3494

TT Ltd., Inc.

18 Mercer Street

New York, NY 10013

212-966-6695

**Defendants**

Barbara Whitworth

9 Hilltop Road

Bronxville, NY 10708

917-435-5076

Barbara Whitworth d/b/a/ Whitworth Designs

255 West 36th Street

New York, NY 10028

212-695-1228

Barbara Whitworth d/b/a Whitworth Hats

255 West 36th Street

New York, NY 10028

212-695-1228

Chandra Ransamie

255 West 36th Street

New York, NY 10028

347-426-5606

**Venue:** Plaintiffs designate New York County as the place of trial. The basis of this designation is plaintiffs' residence in New York County.

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

**COMPLAINT**

Index No. 653813 /2015

---

TRACEY TOOKER, and TT LTD., INC.

                      Plaintiffs,

-against-

BARBARA WHITWORTH, d/b/a WHITWORTH HATS, d/b/a WHITWORTH DESIGNS, and CHANDRA RANSAMIE

                      Defendants.

---

TO THE SUPREME COURT OF THE STATE OF NEW YORK

The complaint of the plaintiffs respectfully shows and alleges as follows:

The defendants' injustices perpetrated against the plaintiffs are myriad and diverse, and mainly grouped around the following four activities of the defendants – (A) taking wooden hat blocks representing ten of plaintiffs' key hat styles; (B) using plaintiff's wood hat blocks to manufacture unauthorized copies of plaintiffs' hat styles, which defendants marketed on the internet; (C) making wood reproductions of plaintiff's wood hat blocks for the purpose of being able to continue making unauthorized copies of plaintiff's hat styles, even in the event the wood

1

blocks are/were returned to plaintiffs, and (D) the sloppy manufacture of defective hats for plaintiffs.

1. Co-plaintiff Tracey Tooker is a couture milliner who has been designing and making handmade hats for over 30 years. Her long list of celebrity and socialite clients include First Ladies Nancy Reagan and Hillary Clinton, Caroline Kennedy-Schlossberg, Judith Giuliani, the late Bella Abzug, Princess Yasmin Aga Khan, Meryl Streep, Glenn Close, Bianca Jagger, Aretha Franklin, Martha Stewart, Barbara Walters, Stephanie Seymour, Vera Wang, Tory Burch, Ann Ford, Ann Bass, Kentucky Derby winning horse owner Mrs. John Oxley, and the late Brooke Astor, to name a few. Herself a debutante, she has been called "society's milliner" and "queen of hats". Her hats sell in the range of about $475 to over $2,500, and many are custom-made and one-of-a kind. Her sales activity takes place mainly in New York City; in Southampton, Long Island; and in Palm Beach, Florida. She has made and sold over 50,000 hats during her career.

2. Co-plaintiff Tracey Tooker is owner and President of TT Ltd., Inc., which is a co-plaintiff in this action.

3. Defendant Barbara Whitworth is also a professional hat maker, with a 20 year career making and selling hats under the names of Barbara Whitworth, Barbara Whitworth Hats, and Barbara Whitworth Designs.

4. Co-defendant Chandra Ransamie is an experienced hat sewer who was previously employed by plaintiffs, and is currently employed by defendants.

5. In August 2014, plaintiffs needed assistance in manufacturing hats for a pop-up shop in Southampton, Long Island. Upon recommendation of a long-standing acquaintance from design school, plaintiffs hired defendant Barbara Whitworth.

6. There was no written contract between plaintiffs and defendants. However, there was a verbal contract that plaintiff would communicate orders and instructions for the manufacture of specific hats to defendants. The defendants would manufacture the hats to plaintiffs' order, and deliver the finished hats to plaintiffs. The plaintiffs were to provide the raw materials at their own cost.

7. Since plaintiffs had some pre-existing inventory of hats already made, the hats to be made by defendants generally included custom orders, and hats for which plaintiff had run out of inventory.

8. In order to manufacture plaintiff's hats to plaintiffs' specifications, the defendants needed to use plaintiffs' wooden hat blocks, with the exception of the Shona style, where the plaintiffs supplied the crown block only, and it was agree that defendants were to use their own brim block.

9. Hat blocks are solid wood pieces shaped like a hat crown or a hat brim. Some hat styles also require a sinker, which is a piece that fits within the crown block to create an indentation in

3

the crown. The straw, or felt, or other material, is steamed and stretched over the wood hat block to form the exact hat shape. In a few cases, a crown from one style can be used with a brim from a different style, to create yet another style. The look of the hat can be varied, by using different materials, colors, and trims, to create one-of-a-kind hats.

10. Plaintiffs' wood hat blocks were custom made to plaintiffs' specifications and represent plaintiff's unique headwear designs. Co-plaintiff Tracey Tooker, who has a background in three-dimensional design, either sculpted or crafted the block shape in three dimensions in a different material and then submitted the shape to the wood block manufacturer to be recreated in wood, or else made mechanical drawings from which the wood block maker made the wood block to the exact size and shape specified by plaintiff.

11. Accordingly, these hat blocks were one-of-a-kind, unique, custom made hat blocks embodying plaintiffs' proprietary, self-designed hat styles.

12. The wood hat blocks can be viewed as a necessary, if not the most necessary, piece of manufacturing equipment used in the making of hats. The block is the pattern or mold upon which the hats are shaped. Without the proper block, it is almost impossible to construct a hat that looks exactly like the required design. Of course it would be possible to use another object, such as an upturned saucepan or a football, to shape a hat, but it will not have the right look.

13. Over the course of her 30 year millinery career, co-plaintiff Tracey Tooker had at various points in time been in possession of dozens of wood hat blocks. With each passing season, plaintiffs retained styles that sold well, and continued them into the next season. The styles that survived from one year to the next were called "runners". Some styles came and went, but the "runners" survived.

14. By August 2014, plaintiffs had accumulated about 20 or so "runners", which constituted her most popular selling hats, and the core of her hat collection.

15. In August 2014, plaintiffs delivered to defendants, wood hat blocks representing 15 of plaintiffs' most popular styles, in order for defendants to manufacture the hats plaintiffs needed for the Southampton pop-up store. All these runners except one were in plaintiffs' hat line since at least 1997, and one was on plaintiffs' hat line since 2001.

16. In addition to the wood hat blocks, plaintiffs also delivered finished hat samples of five of plaintiffs' styles. Defendants were to copy these samples to plaintiffs' order, if requested.

17. Most of the wood hat blocks and the hat samples were delivered to defendants' studio on West 35th Street, NYC by the plaintiffs' then-assistant, Chelsea Phillips, in August 2014.

18. Defendants used plaintiffs' hat blocks in August 2014 to manufacture hats for plaintiffs' Southampton pop-up store.

5

19. Following the August 2014 Southampton pop-up store, defendants continued making hats to plaintiffs' specifications through the fall of 2014, winter of 2014/2015, and through the spring and early summer of 2015.

20. Starting around November 2014, co-plaintiff Tracey Tooker went to Palm Beach, FL and sold her hats there at various trunk shows.

21. In January, 2015, plaintiffs delivered to defendants' NYC studio two additional wood hat blocks of plaintiffs, so that defendants could make some additional styles requested by plaintiffs' Palm Beach customers.

22. During the period August 2014 through May 2015, about a ten-month period, defendants manufactured an estimated 31 hats for plaintiffs for Southampton, Palm Beach and New York City customers. Defendants delivered said hats to plaintiffs.

23. In all cases during this ten month period, the hats were paid for in full by plaintiffs, prior to delivery to plaintiff. Payments were made by co-plaintiff TT Ltd., Inc. by credit card to defendant Barbara Whitworth.

24. The hat blocks which were in defendants' possession for the purposes of defendants manufacturing hats for the period August 2014 through May 2015 were as follows:

    WOOD BLOCKS

      a. Barbara crown and Barbara brim

b. Berry crown, Berry sinker and Berry brim

c. Gondolier crown, Gondolier brim

d. Holly crown, Holly sinker, and Holly brim

e. Crown used for the Shona, Kate, Katherine and Martha

f. Kate brim

g. Katherine brim

h. Madcap crown and Madcap brim

i. Paige crown, Paige brim

j. Sailor crown, Sailor brim

k. Tiffany crown, Tiffany brim

l. Valentino crown, Valentino brim

m. Wen crown, Wen brim


SAMPLES

n. Small Fedora straw hat sample

o. Small round crown sample

p. Lime green beach hat sample

q. Erica sample in felt

r. Swivel beret sample in white pagalina

s. Olivia sample

7

## DEFENDANTS' MANUFACTURE OF DEFECTIVE HATS FOR PLAINTIFFS

25. During the period August 2014 through May 2015, plaintiffs became increasingly concerned about defendants' ability to manufacture hats to plaintiffs' standards and specifications. While the prior practice was for defendants to mail finished custom order hats directly to the customers, plaintiffs began requesting that the hats be sent to plaintiffs first, so that plaintiffs could inspect them.

26. Upon inspection of the hats manufactured by defendants, plaintiffs discovered many errors and faults in fourteen of the hats, including holes in the hats, faulty sewing, uneven stitching, brown spots and streaks in the straw that should have been cut out prior to sewing the straw, smooth side of the straw facing down and the rough side facing up (backwards), brim of the hat upside down, indentations on the brim, brims of the wrong width, hats delivered in a different style than requested, and hats of the wrong shape.

27. In some cases the holes in the hats were three-quarters of an inch to an inch long.

28. In one case, there were so many thick threads randomly sticking out of the hat, that they looked like worms.

29. In one case, a hat had to be redone not once, not twice, but three times.

8

30. The holes, brown streaks, and other defects in the hats were beyond mere oversights, but appeared deliberately and maliciously inflicted by defendants. The defects went beyond any standard of normal care and professionalism in manufacture, particularly considering the end product was a hat that sold for $475 to over $1,000 and up. These were not small, unnoticeable defects, but rather large, glaring defects that made the hats unsellable.

31. Co-defendant Chandra Ransamie, as the sewer of the hats, was principally responsible for these defects, as most would have been incurred at the sewing stage. Since Ms. Ransamie had previously worked for the plaintiffs for several years, plaintiffs knew the high quality of co-defendant's previous work, yet this latest work was substandard.

32. Co-defendant Barbara Whitworth, herself a professional milliner for decades, would have been in the position of supervising and inspecting Ms. Ransamie's work, however she obviously failed to do so or did not exercise care in doing so.

33. The level of defects was so egregious, and so unlike a professional sewer or professional milliner, and so below the normally accepted standards of hat making quality, that it would be impossible to believe that such defects could have been missed by the eyes of two individuals who were career-long hat making professionals. The only conclusion that can be reached is that the defendants deliberately sent plaintiff hats with holes, brown streaks and other defects in order to harass, annoy and otherwise cause harm to the plaintiffs.

34. Since almost half the hats manufactured by defendants for plaintiffs were defective, plaintiffs incurred (a) substantial costs in shipping the defective hats back to defendants for reworking, (b) labor costs of reworking through plaintiffs' own employees, (c) wasted materials used to manufacture the defective hats and additional cost of materials for the replacement hats, (d) labor cost of stripping trims off defective hats to re-use elsewhere, (e) administrative costs, (f) delays in delivering custom-ordered hats to customers, (g) loss of credibility among plaintiffs' customers, (h) shortages or outages of inventory of plaintiffs' most popular styles, and (i) considerable angst for plaintiffs.

35. Plaintiffs' customers are amongst the highest-profile, wealthiest, most stylish and most discerning women in the world. The do not tolerate untoward delays in making their custom hats. And they certainly do notice if there are holes or brown streaks, or if the style delivered is not the style ordered.

36. When plaintiffs complained to co-defendant Barbara Whitworth, she replied "the customers won't notice".

37. To add insult to injury, defendants charged plaintiffs to correct the mistakes, therefore charging double.

38. The causes of action that arise from defendants' behavior are as follows.