39. First, breach of contract. A contract existed between plaintiffs and defendants. Plaintiffs performed their duties under the contract, and defendants did not perform under the contract, causing damages to plaintiffs.

40. Second, breach of implied covenant of good faith and fair dealing. Plaintiffs and defendants were parties to a contract, defendants acted to deprive plaintiffs of the right to receive the benefits under the agreement, and the implied covenant of good faith and fair dealing is completely consistent with the contract.

41. Third, breach of an implied warranty for fitness of purpose. The defendants, as manufacturers and sellers of hats, had reason to know the purpose for which the goods were intended. The defendants/sellers knew or had reason to know that the buyer/plaintiff was relying on the defendants/sellers' skill or judgment to select or furnish suitable goods for the specified purposes, and the buyer/plaintiff relied on the defendants/sellers' skill or judgment.

42. Fourth, civil conspiracy. The co-defendants, Barbara Whitworth and Chandra Ransamie, had an agreement amongst them, and intentionally participated in furtherance of a plan or purpose resulting in damage to plaintiffs.

43. Fifth, tortious interference with contractual relationships. Plaintiffs had business relationships with third parties, namely the identified custom-order hat customers. Defendants knew of these business relationships and intentionally interfered with these relationships. Defendants

11

acted solely out of malice. In the alternative, defendants used improper means which amounted to an independent tort, and defendants' interference caused injury to plaintiffs.

## DEFENDANTS' UNAUTHORIZED USE OF PLAINTIFFS' HAT BLOCKS TO MAKE AND SELL HATS FOR DEFENDANT'S PROFIT

44. During the period from August 2014 through May 2015, while defendants were in possession of plaintiffs' hat blocks and hat samples, the defendants used plaintiffs' wood hat blocks to make copies of plaintiffs' original hat styles and market them at trade shows and on the internet, as if they were defendants' styles. The plaintiffs did not discover this until the fall of 2015, after plaintiffs' and defendants' business relationship ended.

45. Plaintiffs lent defendants their wood hat blocks starting in August 2014 solely for the purpose of defendants making hats to plaintiffs' specifications, as contractor for plaintiffs. Defendants were in no way authorized to use plaintiffs' blocks to make "knock-offs" or imitations of plaintiffs' hat designs for sale elsewhere, under defendants' own name and for defendant's own profit.

46. Defendants manufactured hats using plaintiffs' hat blocks and exhibited them at two trade shows in November 2014, according to information publicly available on the internet. The defendants may have sold hats elsewhere as well.

47. Defendants' Facebook page is called **Whitworth Hats – Shopping & Retail**, and is located on the web at www. Facebook.com/Whitworth-Hats. One trade show was in Florida, and a photograph was posted on defendants' Facebook page on November 9, 2014, with a caption, "Whitworth Hats shows in Florida! Take Cover in Style!"

48. The Nov. 9, 2014 photograph of the trade show shows tables of defendants' hats, and mixed in amongst defendants' styles are several clearly identifiable examples of plaintiffs' hat designs, obviously made using plaintiffs' hat blocks, which were in defendants' possession.

49. The hats made using plaintiffs' wood blocks are identifiably different from defendants' pre-existing hat styles, which are clearly shown on defendants' other Facebook postings and on defendants' website.

50. In the November 19, 2014 photograph, there is a light-colored hat on the left side which is a copy of plaintiffs' Wen/Barbara style, using plaintiffs' wood blocks delivered to defendants in August 2014.

51. The right side of the back table in the November 19, 2014 photograph shows three hat styles which are made from wood blocks that plaintiff left with defendants in August 2014. These are the Gondolier (crown block and brim block), the Berry (crown block and brim block), and a hat using the Valentino crown block.

52. On the back table as well as on the left side of the photo are a couple of examples of the small fedora, which is a copy of one of the sample hats left by plaintiffs with defendants in August 2014.

53. In the November 19, 2014 trade show photograph, on the table on the right side there are several examples of visors that are copies of the Martha visor from plaintiff's website, but made using plaintiff's Valentino wood brim block left with defendants in August 2014.

54. The back table in the November 19, 2014 photograph shows several copies of the Tracey Tooker large cowboy, a hat which had been on Tracey Tooker's line for decades, although plaintiff had provided defendants with neither the wood blocks nor samples of this style.

55. Photographs of a second trade show were posed on Pinterest. The location of the trade show is unknown. The date that the photograph was posted was approximately November, 2014. The exact date of the posting is not indicated, but as of early November 2015, the Pinterest caption indicates "1 year ago".

56. In the Pinterest trade show photograph, there are two clear examples of Tracey Tooker's styles, in sharp contrast to Barbara Whitworth's other hat styles. On the left side, there is a straw hat made using plaintiffs' Tiffany crown block, and next to that a hat made using plaintiff's Shona crown block, both blocks having been left with defendants in August 2014.

14

57. Besides selling unauthorized copies of plaintiffs' designs at trade shows, defendants marketed other hats on Facebook and Twitter that were made using plaintiff's hat blocks.

58. A June 7, 2015 Facebook post shows defendant Barbara Whitworth wearing a hat made using plaintiff's small round crown block. Plaintiffs had left a sample of this style with defendants in August 2014.

59. A June 9, 2015 photo posted on Facebook is showing a beret copied from plaintiff's swivel beret sample that plaintiff had left with defendant in August 2014.

60. Defendants also marketed their hats on Twitter, under the name Whitworth Hats (Twitter name @WhitworthHats, on the web at www.twitter.com/WhitworthHats). The Twitter tweets tend to refer to the Facebook postings. Therefore, for example, on November 9, 2014 the defendants advertised the Florida trade show on Twitter, and the link went over to the November 9, 2014 Facebook posting about the trade show.

61. The causes of action that arise from defendants' behavior are as follows.

62. First, breach of contract. A contract existed between plaintiffs and defendants. Defendants were to make hats using plaintiffs' hat blocks and samples, at the request of, and solely for, plaintiffs. There was no authorization by plaintiff allowing defendants, whether in exchange for a royalty fee or not, to use plaintiffs' wood blocks to create and sell defendant's own hats. Plaintiffs performed their duties under the contract, and defendants did not perform under the contract, causing damages to plaintiffs.

15

63. Second, breach of implied covenant of good faith and fair dealing. Plaintiffs and defendants were parties to a contract under which defendants were to make plaintiffs' hats using plaintiffs' wood blocks and samples. By making, marketing and selling their own hats using plaintiffs' hat blocks, defendants acted to deprive plaintiffs of the right to receive the benefits under the agreement. The implied covenant of good faith and fair dealing is entirely consistent with the contract.

64. Third, breach of fiduciary duty. Between plaintiffs and their contract manufacturer, a fiduciary duty exists. A fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another. Plaintiffs entrusted defendants with core proprietary designs as embodied in the manufacturing molds, i.e., the blocks of wood, for the sole purposes of making hats for the plaintiffs. Defendants' misconduct, including self-dealing, acting with a conflict of interest, and acting contrary to the interests of plaintiffs, breached the fiduciary duty and caused injury and damages to plaintiffs.

65. For co-defendant Chandra Ransamie, liability for aiding and abetting a breach of fiduciary duty. The party whom the defendant (i.e. Chandra Ransamie) aids (i.e. Barbara Whitworth) has performed a wrongful act that causes an injury, the defendant (Chandra Ransamie) was aware of her role as part of an overall illegal or tortious activity at the time she provided assistance, and Ms. Ransamie knowingly and substantially assisted the principal violation.

66. Fourth, civil conspiracy. The co-defendants, Barbara Whitworth and Chandra Ransamie, had an agreement amongst them, and intentionally participated in furtherance of a plan or

16

purpose resulting in damage to plaintiffs. In New York, a mere conspiracy to commit a tort is not itself a cause of action, but allegations of conspiracy are permitted to connect the actions of separate defendants with an otherwise actionable tort.

67. Fifth, unfair competition. The principle that one may not misappropriate the results of the skill, expenditures, and labors of a competitor has often been upheld in New York courts. The first element has been met, because the defendants misappropriated the fruits of plaintiffs' labor by obtaining access to plaintiff's ideas through the abuse of a confidential relationship. As a second element, defendant has acted unfairly. As an alternative second element, defendant's activities are likely to confusion or mistakes in the mind of the public - particularly since one of the trade shows was in Florida, a key market for plaintiffs for many years. Defendants' hats are targeted toward the UV-protection, skin cancer market and sell for a fraction of the price for what plaintiffs hats sell for, and therefore likely to cause confusion among Tracey Tooker's and Barbara Whitworth's customers.

68. Sixth, copyright infringement. Valid, enforceable copyrights existed. A common law copyright existed through plaintiff's three decades of making, marketing and selling hats of these unique designs. In addition, the custom made and custom designed wooden hat blocks incorporated the plaintiff's intangible property into tangible property, as did the physical samples. Defendants' unauthorized use of the wood blocks and samples to reproduce plaintiffs' designs into the manufacture of defendant's own hats is therefore an infringement of plaintiff's copyrights.

69. Seventh, unjust enrichment. Defendants benefited from having unrestricted and unauthorized access to the wood blocks and samples representing decades of plaintiff's best-selling runners. Defendants benefitted at plaintiffs' expense. Equity and good conscience require restitution.

## DEFENDANTS' CONVERSION OF PLAINTIFFS' HAT BLOCKS

70. On or before May 5, 2015, co-plaintiff Tracey Tooker informed co-defendant Barbara Whitworth that plaintiff needed three of the hat blocks back – the Tiffany, the Shona and the Madcap, as well as some of plaintiffs' straw. Plaintiffs wanted to pick up these items on May 5, 2015. Co-defendant Barbara Whitworth claimed by text message that neither she nor co-defendant Chandra Ransamie were in all week, that she was at a trade show and Chandra was in Guyana, and so therefore the blocks could not be picked up. Through a series of text messages on May 5, 2015, Ms. Tooker and Ms. Whitworth attempted to arrange for Ms. Whitworth to leave the blocks with the doorman until Ms. Tooker could arrange for someone to come pick them up. However Ms. Whitworth texted that the blocks would be left in the public hallway and that she would not be held responsible.

71. Upon checking with the defendant's building's security desk downstairs, the plaintiffs later discovered that the defendants had indeed signed into the building and were in that week, and that the story about being out all week and unable to leave blocks with the doorman was an utter fabrication, intended to harass and annoy plaintiffs.

18

72. Plaintiffs made a second attempt to recover all her blocks, as well as the samples that had been left, and plaintiffs' straws and other raw materials, on June 15, 2015.

73. In June 2015, plaintiffs' assistant Lisa McLellan made arrangements with defendants to pick up all the hat blocks. On June 15, 2015, co-plaintiff Tracey Tooker along with her assistant Lisa McLellan visited defendants' studio. Both Barbara Whitworth and Chandra Ransamie were present at Ms. Whitworth's studio.

74. On June 15, 2015, at first defendants agreed to return some, but not all, of plaintiffs' hat blocks. The blocks that were to be returned were left in a pile by the defendants' door. Included in the pile were the three blocks that plaintiffs had unsuccessfully attempted to get back on May 5, 2015 – the Tiffany, the Shona and the Madcap.

75. When co-plaintiff Tracey Tooker noted to defendants that not all of her hat blocks were in the pile of blocks on the floor being returned, and that some of plaintiffs' hat blocks were still visibly sitting on defendant's shelves on the walls of the studio, defendant Barbara Whitworth called the police.

76. After the police arrived, co-plaintiff Tracey Tooker and her assistant were forced to leave defendants' studio and wait out in the hallway while the police officer spoke to defendants Barbara Whitworth and Chandra Ransamie.