77. When co-plaintiff Tracey Tooker and her assistant were allowed back into defendants' studio, the police officer requested them to leave. Plaintiff and her assistant left with an even smaller group of hat blocks than the original group of hat blocks in the pile before the police officer arrived. Specifically, the Tiffany, Shona, and Madcap crown blocks, which were on the pile before the police officer arrived, were now no longer included in the pile. No doubt, the defendants surmised that these were important hat blocks to plaintiff, so defendants purposely moved them off the pile while the plaintiff and her assistant were waiting in the hallway.

78. Upon returning to her own studio, co-plaintiff Tracey Tooker together with her assistant Lisa McLellan drew up a written inventory of the hat blocks, samples, and straws that defendants returned on June 15, 2015.

79. With respect to the wood blocks, in some cases defendants returned full sets (crown and brim). In some cases defendants returned only the brim of a set, retaining the crown. In some cases the defendants returned neither the crown block nor the brim block and retained both the crown block and brim block in their possession.

80. With respect to the samples, defendants returned some to plaintiffs, and not others.

81. The hat blocks and samples retained by defendants and not returned to plaintiffs are:

### WOOD BLOCKS

a. Barbara crown and Barbara brim

b. Berry crown, and Berry sinker

c. Holly sinker

d. Crown used for the Shona, Kate, Katherine and Martha

e. Kate brim

f. Madcap crown

g. Sailor crown, Sailor brim

h. Tiffany crown

i. Valentino crown

### SAMPLES

j. Small Fedora straw hat sample

k. Small round crown sample

l. Lime green beach hat sample

m. Erica sample in felt

n. Swivel beret sample in white pagalina

o. Olivia sample

82. Plaintiff Tracey Tooker initiated a Small Claims Court action on July 2, 2015 in an attempt to get her wood blocks back. A hearing was held on September 10, 2015, at which time Tracey Tooker explained her story. After this, the Small Claims Court employee asked Barbara

Whitworth whether she had any of Ms. Tooker's property in her possession, and Ms. Whitworth said "No."

83. The plaintiff's causes of action are as follows.

84. First, conversion. Plaintiffs had a possessory right or interest in the wood hat blocks as well as the samples. Co-plaintiff Tracey Tooker designed the wood blocks, had them custom carved in wood, and used the blocks for decades in the manufacture of her own hats. Defendants have refused to return the hat blocks. Defendants are exercising dominion over plaintiff's property in derogation of plaintiffs' rights.

85. Second, breach of contract. A contract existed between plaintiffs and defendants. Defendants were to make hats using plaintiffs' hat blocks and samples, at the request of and for plaintiff. Upon completion of the contract, defendants were to return plaintiffs' hat blocks and samples. Plaintiffs performed their duties under the contract, and defendants did not perform under the contract, causing damages to plaintiffs.

86. Third, breach of implied covenant of good faith and fair dealing. Plaintiffs and defendants were parties to a contract under which defendants were to make plaintiffs' hats to plaintiff's specifications using plaintiffs' hat blocks and samples. By failing to return the hat blocks and samples, defendants acted to deprive plaintiffs of the right to receive the benefits under the agreement. The implied covenant of good faith and fair dealing is utterly consistent with the contract.

87. Fourth, breach of fiduciary duty. A fiduciary duty exists in all cases in which confidence has been reposed and betrayed. The rule encompasses both technical fiduciary relations and those informal relations which exist whenever one man (or woman) trusts in, or relies upon, another. Under New York law, such a relationship might be found to exist, in appropriate circumstances, between close friends or even where confidence is based upon prior business dealings. Between plaintiffs and their contract manufacturer, a fiduciary duty existed since plaintiffs entrusted defendants with manufacturing equipment embodying plaintiffs' valuable intellectual property. Defendants' conversion of the hat blocks constituted self-dealing, acting with a conflict of interest, and acting contrary to the interests of plaintiffs, causing injury and damages to plaintiffs.

88. For co-defendant Chandra Ransamie, liability for aiding and abetting a breach of fiduciary duty. The party whom the defendant (i.e. Chandra Ransamie) aids (i.e. Barbara Whitworth) has performed a wrongful act that causes an injury, the defendant (Chandra Ransamie) was aware of her role as part of an overall illegal or tortious activity at the time she provided assistance, and Ms. Ransamie knowingly and substantially assisted the principal violation.

89. Fifth, civil conspiracy. The co-defendants, Barbara Whitworth and Chandra Ransamie, had an agreement amongst them, and intentionally participated in furtherance of a plan of conversion, resulting in damage to plaintiffs.

90. Sixth, unfair competition. While there is no complete list of activities which constitute unfair competition, the general principle is that in the New York courts, commercial unfairness will

be restrained when it appears that there has been a misappropriation, for the commercial advantage of one person, of a benefit or property right belonging to another person. The defendants misappropriated the fruits of plaintiffs' labor by obtaining access to plaintiff's proprietary design ideas through the abuse of a confidential relationship. Not only was there a misappropriation of the intangible property, there was a misappropriation of the tangible wood hat blocks and samples. As a second element, defendant has acted unfairly.

91. Seventh, copyright infringement. Valid, enforceable copyrights existed. A common law copyright existed through plaintiffs' three decades of making, marketing and selling hats of these unique designs. The custom made and custom designed wooden hat blocks also incorporated the plaintiffs' intangible property into tangible property, as did the physical samples. Defendants' conversion of the plaintiffs' wood blocks and samples, allowing defendants to reproduce plaintiffs' designs into the manufacture of defendant's own hats, is therefore an infringement of plaintiffs' copyrights.

92. Eighth, unjust enrichment. Defendants benefited from having unrestricted and unauthorized access to the wood blocks and samples representing decades of plaintiffs' best-selling runners. By converting these hat blocks and samples, defendants benefitted at plaintiffs' expense. It is against equity and good conscience to permit defendants to retain the plaintiffs' property that is sought to be recovered.

93. Ninth, intentional infliction of emotional distress. Defendants' conduct has been malicious, extreme and outrageous, with intent to cause, or disregard of a substantial probability of

24

causing, severe emotional distress. These are not just ordinary pieces of wood, these are an embodiment of the plaintiff's lifelong career of artistic design work. They are the embodiment of plaintiff's best-selling hat styles, and the means to plaintiff's economic livelihood. There is a causal connection between defendants' conversion and plaintiffs' injury. In addition to emotional distress, defendant's conversion of plaintiff's blocks has disrupted fifteen of her best-selling styles and has caused financial distress and disruption.

94. Tenth, prima facie tort. Defendants have intentionally inflicted harm on the plaintiffs, which results in special damages, without any excuse or justification, by an act or series of acts, for example, the removal of the Shona, Tiffany and Madcap crown blocks from the pile of blocks on the floor after the police officer arrived. Malevolence is the sole motive.

## DEFENDANTS' COPYING OF PLAINTIFFS' HAT BLOCKS

95. On June 15, 2015, when co-plaintiff Tracey Tooker and her assistant Lisa McLellan visited defendants' studio to get the hat blocks back, plaintiff looked around defendants' studio and noticed some of her hat blocks were still on the defendants' shelves.

96. Several of plaintiff's hat blocks have a greenish tinge to them, from years of placing green felt on them to make the hat size bigger. Moreover, the appearance of an aged, darkened, 20 year old piece of wood is very different from a brand new bright yellow piece of wood. Moreover, some of the darkened greenish pieces appeared as if attempts had been made to sand them down.

97. In several instances, co-plaintiff Tracey Tooker saw on defendants' studio shelves her own proprietary wood block, and next to it a shiny brand new identical wood block. This indicates that Barbara Whitworth was having copies made of plaintiff's wood blocks. During the ten month period that defendants had plaintiff's wood blocks in hand, they could easily go to a block maker and have them reproduced in wood.

98. Plaintiff Tracey Tooker is of the belief that a hat block maker called Ramone Espinal is the individual copying her wood blocks for Barbara Whitworth. The only other wood hat block maker in the U.S. is in Minnesota, and he makes them for plaintiff. When Ms. Tooker called Mr. Espinal and identified herself on the telephone, he immediately hung up.

99. The causes of action from defendants' actions are as follows:

100. First, breach of contract. A contract existed between plaintiffs and defendants. Defendants were to make hats using plaintiffs' hat blocks and samples, at the request of, and for, the plaintiffs. Upon completion of the contract, defendants were to return plaintiffs' hat blocks and samples. Defendants were not authorized to make wood copies of plaintiff's wood blocks. Plaintiffs performed their duties under the contract, and defendants did not perform under the contract, causing damages to plaintiffs.

101. Second, breach of implied covenant of good faith and fair dealing. Plaintiffs and defendants were parties to a contract under which defendants were to make plaintiffs' hats to plaintiff's

specifications using plaintiffs' hat blocks and samples. By making copies of said wood blocks for their own use, defendants deprived plaintiffs of the right to receive the benefits under the agreement. The implied covenant of good faith and fair dealing is wholly consistent with the contract.

102. Third, breach of fiduciary duty. Between plaintiffs and their contract manufacturer, a fiduciary duty exists. Plaintiffs entrusted defendants with the possession of proprietary wood hat blocks embodying a lifelong career of plaintiff's best-selling, self-designed styles. Defendants' misconduct, including making wood copies of plaintiffs' hat blocks, constitute self-dealing, acting with a conflict of interest, and acting contrary to the interests of plaintiffs, causing injury and damages to plaintiffs.

103. For co-defendant Chandra Ransamie, liability for aiding and abetting a breach of fiduciary duty. The party whom the defendant (i.e. Chandra Ransamie) aids (i.e. Barbara Whitworth) has performed a wrongful act that causes an injury, the defendant (Chandra Ransamie) was aware of her role as part of an overall illegal or tortious activity at the time she provided assistance, and Ms. Ransamie knowingly and substantially assisted the principal violation.

104. Fourth, civil conspiracy. The co-defendants, Barbara Whitworth and Chandra Ransamie, and possibly Barbara Whitworth and Ramone Espinal, had an agreement amongst them, and intentionally participated in furtherance of a plan of converting and copying the wood blocks, resulting in damage to plaintiffs. In New York, a claim for conspiracy is the string whereby the plaintiffs may tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.

105. Fifth, unfair competition. The defendants misappropriated the fruits of plaintiffs' lifelong labor by obtaining access to plaintiff's design and marketing ideas, as embodied in the wood hat blocks, through the abuse of a confidential relationship. As a second element, defendant has acted unfairly by unauthorized copying of plaintiffs' wood blocks.

106. Sixth, copyright infringement. Valid, enforceable copyrights existed. A common law copyright existed through plaintiff's three decades of making, marketing and selling hats of these unique designs. The custom made and custom designed wooden hat blocks also incorporated the plaintiff's intangible property into tangible property, as did the physical samples. Defendants' copying of the plaintiff's wood blocks into new wood blocks, which allows defendants to reproduce plaintiffs' designs into the manufacture of defendant's own hats even in the event plaintiffs' hat blocks are returned to plaintiffs, is an infringement of plaintiff's copyrights.

107. Seventh, unjust enrichment. Defendants benefited from having unrestricted and unauthorized access to the wood hat blocks representing decades of plaintiffs' best-selling runners. Defendants were in no way authorized to make copies of plaintiffs' valuable and proprietary wood hat blocks. Defendants benefitted at plaintiffs' expense. It is against equity and good conscience to permit the defendants to retain the wood reproductions that are sought to be recovered.