UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 3 1 2016
```

Tracey Tooker & TT Ltd., Inc.,

          Plaintiffs,

–v–

Barbara Whitworth & Chandra Ransamie,

          Defendants.

15-cv-9890 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

      Plaintiff Tracey Tooker ("Tooker"), a hat-maker, brings this suit against her former colleague Barbara Whitworth ("Whitworth"), and Whitworth's employee Chandra Ransamie ("Ransamie"). Tooker hired Whitworth to make hats, but their relationship deteriorated. Tooker alleges that Whitworth made defective hats, refused to return her hat blocks (wooden blocks used in the hat-making process), copied the hat blocks, and made unauthorized copies of Tooker's hat styles. The complaint is brimful with causes of action arising from Whitworth and Ransamie's alleged conduct. Tooker sues for breach of contract, breach of implied covenant of fair dealing, breach of implied warranty of fitness, breach of fiduciary duty, civil conspiracy, unfair competition and misappropriation of trade secrets, unjust enrichment, conversion, intentional infliction of emotional distress, and prima facie tort, all under New York common law. She also sues under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204, and New York common law copyright. With respect to federal law, she brings two claims before the Court: violation of Chapter 13 of the Copyright Act ("Chapter 13"), 17 U.S.C. § 1301 *et seq.*, and infringement of trademark and trade dress under the Lanham Act, 15 U.S.C. § 1125(a). Additionally, Tooker seeks a preliminary injunction preventing the sale or transfer of her hat blocks, and seizure of the blocks pursuant to N.Y.C.P.L.R. § 7101. Whitworth moves to dismiss

1

all of Tooker's federal claims and many of her state claims. Dkt No. 52. She has answered the remaining allegations and seeks judgment on the pleadings for the warranty and breach of contract claims. Dkt No. 59. Ransamie moves to dismiss all claims against her. Dkt No. 50. Defendants also move for sanctions. Dkt. No. 85. For the reasons explained below, the Court dismisses Tooker's federal claims and remands the rest of the case to state court. The Court also denies the motion for sanctions.

I.   **Background**

The facts surrounding this clash of haberdashers are taken from the complaint. Tracey Tooker is a debutante, and for thirty years has been a maker of fancy hats for the rich and famous. Am. Compl. ¶ 1. Known as "society's milliner" and the "queen of hats," Tooker's celebrity clients have included Nancy Reagan, Hillary Clinton, Meryl Streep, Aretha Franklin, and Martha Stewart. *Id.* Plaintiff TT Ltd., Inc., is Tooker's business. *Id.* ¶ 2. Defendant Barbara Whitworth is a hat-maker with twenty years of experience. *Id.* ¶ 3. Defendant Chandra Ransamie is a hat sewer who was working for Whitworth during the period covered by the complaint. *Id.* ¶ 4.

In August 2014, Tooker hired Whitworth to help produce hats for a pop-up shop in Long Island. *Id.* ¶ 5. The two had an oral contract under which Tooker would send orders and instructions to Whitworth, and pay for raw materials. *Id.* ¶ 6. Whitworth, in turn, would manufacture the hats to order and deliver them back to Tooker. *Id.* After the pop-up shop, Tooker continued to employ Whitworth to manufacture hats through May 2015. *Id.* ¶ 22, 25. In total, Whitworth produced 31 hats for Tooker. *Id.* ¶ 25.

Tooker's hats are made by steaming felt or straw, and then giving the material shape by stretching it over wooden hat blocks. *Id.* ¶ 9. Each hat requires the use of at least two blocks (one for the crown and one for the brim), and sometimes more. *Id.* ¶ 9. In order for Whitworth to produce Tooker's hats, Whitworth had to use Tooker's custom-made hat blocks. *Id.* ¶ 8. Tooker provided Whitworth with an initial set of hat blocks, along with some sample hats, when

the two began working together, *id.* ¶ 20, and a second group of blocks in January 2015. *Id.* ¶ 24.

By May 2015, the relationship between Tooker and Whitworth had unraveled. Tooker gradually became concerned with the quality of the hats Whitworth and Ransamie were producing. *Id.* ¶ 28. She instructed Whitworth to start sending the hats to Tooker for inspection, rather than directly to clients. *Id.* Tooker discovered that the craftsmanship of Whitworth's hats was substantially below professional standards—so far below, in fact, that Tooker alleges that malice is the only plausible explanation. *Id.* ¶¶ 29–36. After the business relationship between the parties ended, Tooker discovered that Whitworth had been using the hat blocks to make knockoffs. *Id.* ¶ 47. Whitworth exhibited the knockoffs at trade shows and marketed them on social media under her own name. *Id.* ¶¶ 49–63.

Moreover, Tooker alleged, Whitworth failed to return all of Tooker's hat blocks and samples. After an abortive retrieval attempt in early May, Tooker arranged to pick up her blocks and sample hats from Whitworth's studio on June 15, 2015. However, Whitworth returned only some of the hat blocks. *Id.* ¶¶ 89–90. When Tooker complained that some of her blocks and samples were still sitting on Whitworth's shelves, Whitworth called the police, who eventually forced Tooker to leave without many of her possessions. *Id.* ¶¶ 90–92. During this encounter, Tooker observed that Whitworth had made copies of many of her hat blocks. *Id.* ¶¶ 112–14.

Tooker filed suit against Whitworth and Ransamie on November 19, 2015, seeking various forms of relief including a preliminary injunction against sale or transfer of the hat blocks, and seizure of chattels under N.Y.C.P.L.R. § 7101. Dkt. No. 1 Ex. A. Defendants removed the case to this Court on December 18, 2015. Dkt. No. 1. Tooker filed an amended complaint on February 17, 2016. Dkt. No. 39. Whitworth filed a partial motion to dismiss and an answer on March 11, 2016. Dkt. Nos. 52, 54. Ransamie filed a motion to dismiss that same day. Dkt. No. 50. On March 16, 2016, Whitworth moved for judgment on the pleadings on Tooker's contract and implied warranty claims. Dkt. No. 59.

## II. Tooker's Federal Claims Are Meritless

Whitworth moves to dismiss Tooker's federal copyright and trade dress infringement claims, along with her state law claims for breach of implied covenant of good faith, civil conspiracy, tortious interference, breach of fiduciary duty, unfair competition (under both New York and Florida law), intentional infliction of emotional distress, and prima facie tort. However, the Court will address only Tooker's federal claims under Chapter 13 and the Lanham Act. As explained below, the Court finds both federal claims to be meritless, and it declines to exercise supplemental jurisdiction over the rest of this action.

### A. Legal Standard

When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the complaint will survive the motion to dismiss so long as it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of the level of factual detail provided, if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," then the Court will dismiss the case. *Twombly*, 550 U.S. at 558.

A court evaluating a motion under Rule 12(b)(6) must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N. Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## B. Tooker's Chapter 13 Claim Fails Because the Statute's Protections Are Limited to Vessel Hulls

Chapter 13 provides protection for "[t]he designer or other owner of an original design of a useful article which makes the article attractive or distinctive in appearance to the purchasing or using public." 17 U.S.C. § 1301(a)(1). Tooker contends that her hats are "useful articles" that fall within this protection. Am. Compl. ¶ 76; Opp. at 26. Chapter 13, however, defines "useful articles" in a way that textually precludes recovery for Tooker. According to 17 U.S.C. § 1301(b)(2), "[a] 'useful article' is a *vessel hull or deck*, including a plug or mold, which in normal use has an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." (Emphasis added). In other words, the plain meaning of Chapter 13 provides protection only for "vessel hulls or decks," not hats. *See* Howard C. Anawalt, IP Strategy: Complete Intellectual Property Planning, Access & Protection § 1:94 (2015) ("While the definition of coverage [in Chapter 13] is initially broad, it is immediately narrowed into protection *only* of the design of a vessel hull." (emphasis added)).

Tooker argues that the Court should not read § 1301 as so limited. She points out that "§ 1301(b)(2) does not say a useful article is '*only*' a vessel hull or deck." Opp. at 26. According to Tooker, the purpose of § 1301(b)(2) was not to narrow the scope of Chapter 13's protection solely to vessel hulls, but to clarify that "vessel hulls or docks" (among other "useful articles") are subject to protection under Chapter 13. *Id.*

The Court finds Tooker's argument unpersuasive when considering the legislative history and existing case law in addition to the plain, unambiguous text. Chapter 13 of the Copyright Act codifies the Vessel Hull Design Protection Act ("VHDPA"). *Maverick Boat Co. v. Am. Marine Holdings, Inc.*, No. 02-14102-CIV, 2004 WL 1093035, at *3 (S.D. Fla. Feb. 10, 2004), *aff'd*, 418 F.3d 1186 (11th Cir. 2005). The VHDPA was passed in response to the Supreme Court's decision in *Bonita Boats Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989), a case about boat hulls. *See Maverick Boat Co.*, 2004 WL 1093035, at *3. The few courts that have addressed the statute have limited their analysis to vessel hulls. *See Sorenson v. Wolfson*, No.

10–cv–4596 (JGK), 2016 WL 1089386, *7-8 (S.D.N.Y. Mar. 21, 2016) (noting that the VHDPA applies only "in the context of maritime designs" and rejecting the argument that the Act should be expanded to cover condominium designs); *Applied Concepts Unleashed, Inc. v. Matthews*, No. 12-14035, 2012 WL 12831313, at *6 n.8 (S.D. Fla. Oct. 1, 2012) ("VHDPA protects original designs of boat hulls."); *Maverick Boat Co.*, 2004 WL 1093035, at *3. Tooker cites to no cases applying Chapter 13 outside the context of vessel hulls. *See* Opp. at 25-26.

Because Chapter 13 only protects boats, and not hats, Tooker's copyright claims under Section 1301 are dismissed.

### C. Tooker's Trade Dress Infringement Claim Fails Because She Does Not Specifically Identify the Design Elements She Seeks to Protect

Tooker next argues that Whitworth's creation and sale of knockoff hats gives rise to a claim for trademark and trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a)(1). As will be explained below, however, she fails to state a trade dress infringement claim capable of withstanding a motion to dismiss.

Section 1125(a)(1) provides a cause of action against "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Section 1125 protects trade dress, which includes "what is at issue in this case: the design or configuration of the product itself." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001).

To state a claim for trade dress infringement, a plaintiff must plausibly allege: "1) that the mark is distinctive as to the source of the good; 2) a likelihood of confusion between its good and the defendant's; and, 3) that the trade dress is not functional." *Vedder Software Grp. Ltd. v. Ins. Servs. Office, Inc.*, 545 F. App'x 30, 33 (2d Cir. 2013) (citing *Yurman*, 262 F.3d at 115–16); *see also Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003). In a

6

product design case, the distinctiveness requirement can only be met by showing that the trade dress has "secondary meaning," *i.e.* that "in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself." *Yurman*, 262 F.3d at 115 (brackets omitted). Critically, a plaintiff must also offer "a precise expression of the character and scope of the claimed trade dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). And "a plaintiff asserting that a trade dress protects an entire line of different products must articulate the specific common elements sought to be protected." *Yurman* 262 F.3d at 118; *see, e.g., Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222, 237 (S.D.N.Y. 2013) (applying this standard at motion to dismiss stage); *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599 (RWS), 2012 WL 3240442, at *3 (S.D.N.Y. Aug. 7, 2012) (same).

  The complaint fails to identify the elements of Tooker's product design for which she seeks trade dress protection. The standard requires Tooker to specify both "*which* features are distinctive" and "*how* they are distinctive." *Heller Inc. v. Design Within Reach, Inc.*, No. 09-CIV-1909 (JGK), 2009 WL 2486054, at *6 (S.D.N.Y. Aug. 14, 2009). Tooker has done neither. The complaint states that Tooker's trade dress "includes the size, shape and color of the product and its packaging," Am. Compl. ¶ 80, and that her hats "had unique elements of style, shape, angle, height, width, and/or slant," but provides no further detail, *id.* ¶ 77. These "sweeping descriptions . . . in fact denote categories of features, not the features themselves." *Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06 CV 1657 (JG), 2006 WL 3335008, at *5 (E.D.N.Y. Nov. 17, 2006) (quotation marks omitted). Although Tooker has submitted numerous photos of her hats, the Court cannot distill the distinctive elements of Tooker's trade dress from a collection of photos. *Heller*, 2009 WL 2486054, at *6 ("[I]mages alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress."). Moreover, rather than setting out protectable elements common to her line of hats, Tooker instead emphasizes that "[e]ach hat style is different," and has its own "esthetic and decorative elements." Am. Compl. ¶

7

82. Tooker has failed to specifically identify the elements of her purported trade dress, and for that reason has also failed to adequately plead distinctiveness.

The cases Tooker cites are not relevant. *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13CV3669 (DLC), 2014 WL 6850966, at *1 (S.D.N.Y. Dec. 4, 2014) concerned infringement of a distinctive registered logo trademark. *Diane Von Furstenberg Studio v. Snyder*, No. 1:06CV1356 (JCC), 2007 WL 1835276, at *2 (E.D. Va. June 25, 2007) also dealt with the infringement of registered trademarks, and furthermore the defendants in that case did not "address the adequacy of the complaint" in their motion to dismiss. Neither case concerned the issue here, which is a failure to specifically identify the elements of an allegedly-protectable trade dress. Accordingly, Tooker's trade dress claim must be dismissed.

### III. The Court Declines to Exercise Supplemental Jurisdiction Over Tooker's State-Law Claims

In addition to the two federal claims dismissed above, this suit involves a multitude of New York common law claims, as well as a Florida statutory claim. The Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a). However, "district courts may decline to exercise supplemental jurisdiction" over state law claims where "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). "Where the state claims originally reached the federal forum by removal from a state court, the district court has the discretion to dismiss the claims without prejudice or remand them to the state court." *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 293 (E.D.N.Y. 2014) (quoting *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988)). The Court has discretion to retain jurisdiction over state law claims when doing so would serve "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

The Second Circuit has held that, generally, "if all federal claims are dismissed before trial, the state claims should be dismissed as well." *Motorola Credit Corp. v. Uzan,* 388 F.3d 39,

56 (2d Cir. 2004) (alterations and internal quotation marks omitted). This rule admits of some exceptions if the case has progressed significantly and dismissing the state claims would be exceptionally wasteful. *Id.* Here, however, Tooker does not object to remand of her state law claims, *see* Am. Compl. ¶ 8, and the Court has not adjudicated the case beyond the motion to dismiss stage. The Court can see no reason to retain jurisdiction. The Court finds that "convenience and comity weigh in favor of the remaining state-law claims being heard in state court, and that judicial economy is not served by this case remaining in federal court." *In re Harbinger Capital Partners Funds Inv'r Litig.*, No. 12-CV-1244 (AJN), 2015 WL 1439520, at *14 (S.D.N.Y. Mar. 30, 2015). The Court therefore remands the remaining claims to state court. *See Cohill*, 484 U.S. at 353.

### IV.   No Sanctions Are Warranted

Defendants have moved for Rule 11 sanctions against Tooker on the ground that her federal claims were frivolous. Dkt No. 85. Defendants seek reimbursement of reasonable attorney's fees and other expenses associated with this purported violation. Dkt No. 86.

Under Federal Rule of Civil Procedure 11, a court may sanction an attorney, law firm, or party that files a pleading that is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" or contains factual allegations that have no evidentiary support. Fed. R. Civ. P. 11; *see also Lawrence v. Richman Grp. of Conn. LLC*, 620 F.3d 153, 156 (2d Cir. 2010). Defendants argue that Tooker's Amended Complaint warrants sanctions because both of her federal claims were "objectively unreasonable." Memo. Supporting Mot. for Sanctions at 5 (Dkt No. 86). The Court disagrees.

As explained above, the Court agrees with Defendants that Tooker's copyright claim must be dismissed because the plain text of Chapter 13 precludes recovery, as Chapter 13 only protects vessel hull designs. But, because Chapter 13 is a bit misleading at first glance, the Court deems Tooker's argument meritless, but not frivolous. Chapter 13 is captioned "Protection of Original Designs," a caption that does not convey the Chapter's vessel hull limitation.

9

Furthermore, "the definition of coverage [in Chapter 13] is initially broad," *see* Anawalt, *supra*, § 1:94, purporting to protect "[t]he designer or other owner of an original design of a useful article," 17 U.S. Code § 1301(a)(1). Tooker acknowledged that a subsequent definitional provision appeared to narrow Chapter 13's coverage to vessel hulls and decks, *see* 17 U.S. Code § 1301(b)(2), but made a good faith — albeit weak — argument as to why § 1301(b)(2) should not be viewed as so limited. The fact that Tooker's statutory argument was weak does not mean it was sanctionable. *See Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851(NGG), 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("Rule 11 sanctions are not appropriate where there is a viable claim that is weak.").

Nor does Plaintiff's trade dress claim warrant sanctions. As explained above, the Court ultimately dismisses Plaintiff's trade dress claim, but on the ground that the allegations are too conclusory, not on the ground that a trade dress claim would be entirely unreasonable. *See Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 214 (E.D.N.Y. 2010) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986)) ("Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success."). Additionally, the Court does not hold the view based on the proceedings to date that this suit was brought simply to harass the defendants, and the merits of the state court claims have not yet been reviewed. *See In re Merrill Lynch Tyco Research Sec. Litig.*, No. 03 CV 4080(MP), 2004 WL 305809, *5 (S.D.N.Y. Feb. 18, 2004) (finding Rule 11 sanctions unwarranted because "[t]here [wa]s no evidence that Plaintiff filed his Consolidated Amended Complaint for an improper purpose such as to harass defendants") (quotation marks omitted).

For these reasons, Defendants' motion for sanctions is denied.

## V. Conclusion

For the reasons set forth above, the motions to dismiss the federal claims are granted, and Tooker's state law claims are remanded to state court. Defendants' motion for sanctions is

denied. This order resolves Docket Numbers 50, 52, and 85, and it renders Docket Number 59 moot. The clerk of court is instructed to close the case.

    SO ORDERED.

Dated: August 30, 2016
       New York, New York

_____
ALISON J. NATHAN
United States District Judge